forms I represent the appellant in this matter. Mr. Stokes could you just hold on one second I'm having trouble getting folks pinned on my screen I apologize. Thank you for your patience and go right ahead appreciate it. Thank you your honor again Jeff Storms on behalf of Mr. Kohorst. Your honors from a legal standpoint this falls in with a group of cases that I'm sure you're familiar with. I feel like the Kelsey case has sort of become the fault line for us where immunity starts in this circuit. Here I believe that this case falls within the group of cases such as Brown, Montoya, Small and Shannon where the force was excessive and it's established by that robust authority that tells us that only minimal force may be used on individuals who are not suspected of committing serious crimes are not fleeing or not actively resisting and don't pose a threat. But before we talk about the legal standard there's critical fact issues that have to be addressed with respect to the summary judgment standard which is why this case falls within the group of Brown et al. One of the most critical issues is the alleged crime and here the district court found that Mr. Kohorst at the time he was subjected to force was was suspected of being involved in a fight at the movie theater. That is not supported by the record. Here the officer believed he was responding solely to a welfare check. All of his contemporaneous records, the police reports, the statements, his subsequent use of force report all reflect that he was responding to a welfare check and make no reference whatsoever to involvement of Mr. Kohorst with respect to the movie theater. There is a comment that's made I think it's the second video there's a comment that's made are these the two guys that were involved in the incident at the theater? Yes so the second video your honor happened well after the fact and well after Mr. Smith that had his interaction with Mr. Kohorst and when what we have to pay attention to is what's in Mr. Smith's mind at the time he's interacting with Mr. Kohorst and there's no evidence from his statements at the time prior to using any force on Mr. Kohorst or any of his subsequent reports so despite the fact that someone may have made that statement after the fact Mr. officer Smith nowhere references the movie theater incident. What the excuse me I assume that would be your same the same answer that you would make because there was the flash that was put through on the computer screen the video does show the computer is on and the computer screen is up but because there's never any mention that he he saw it that he paid attention to it that it was part of his decision-making process that's just evidence that there's a computer there as far as you're concerned. Correct your honor you know we wouldn't expect the police officers to be reading and want us to be reading text messages and driving at the same time and in the video where you see the computer up certainly officer Smith does not spend any time interacting with that computer we see him exit the squat and you know when he tells Mr. Kohorst why he's there he says you know because you're drunk and someone called and when he writes in his report he says you know my goal here was to get Mr. Kohorst within the care of a responsible adult I isn't to investigate whether or not Mr. Kohorst was involved. But that seems you know while it seems like a weird omission and I I agree with with Judge Eric you know with you and and with Judge Erickson at the same time I'm not sure what to do with all of this evidence so we have that statement at the end of the video and certainly later statements could be probative of what he knew at the time so if there's a statement about are these the two guys at the theater that could be reflective of what he thought about you know 10 15 20 minutes earlier and then you have undisputed you know testimony that it did come through or testimony evidence that it came through on the computer now you're right we don't know if he saw it but we do know that the computer is open isn't that enough I mean I just don't know that the fact that he didn't refer to it in the reports is that enough to create a genuine fact issue that's the thing I'm struggling with and if you could help me with that I would appreciate it absolutely your honor and I obviously go through a long list of different facts that I believe create a genuine issue of material fact for the jury but I think we could also all use our common sense and all of us on this this hearing right now have read multiple police reports if officer Smith or and officers Smith did tase mr. Cohorse multiple times took him to the ground mr. Cohorse was bleeding they understand that whether or not mr. Cohorse was involved in a crime matters for purposes of whether or not that force was appropriate and if an officer was looking to justify their uses of force they absolutely would point out that this individual was a suspect in a fight because they've talked about it repeatedly in defense of this litigation your honor so they would certainly want to note on their use of force report and on their supplements that the reason they're using force in part is because this individual was potentially violent and that certainly did not happen your honor and our common sense tells us that that would have been there and this is one of those weird cases where the absence of something creates an evidentiary dispute right I mean that's really your argument is the absence of referring to this at various places where it would have been common sense to refer to it is what creates the factual dispute yes combined with the affirmative statements as to what he's actually doing in both his reports and orally your honor so for me it's a jury question and that's what we do with it one of the other issues where I feel like the jury was usurped on this is the question of whether or not mr. Cohorse attempted to flee he did not he never attempts to leave the area he stays there the entire time and with respect to a threat there's no evidence that mr. Cohorse was posing a threat to anyone at any point in time all of this started because you know frankly this officer Smith became frustrated and didn't use his words there and then give mr. Cohorse an opportunity to comply you know with nothing wrong with mr. Cohorse asking you know why he wants to see his driver's license and officer Smith rather than just yanking out of his hands can say yeah mr. Cohorse I want to look at your identification to help get you home to help get you to a safe place and mr. Cohorse if you don't comply with that I'm gonna have to detain you or maybe I'm gonna have to arrest you and there was no reason there was nothing that was so rapid and so involving that officer Smith couldn't have taken five to ten seconds to convey that and give mr. Cohorse the opportunity to comply with those verbal commands instead he immediately went hands-on with someone who at that point of time he only knew needed help he had no reason to believe he had committed a crime and I want to ask you about the tasings in particular my understanding of the tasings is that he increased I don't even know what the right word is power maybe the power of them or the intensity or whatever and the first couple had not worked so it looks bad right when police use three tasings in the span of a minute and a half that looks bad until you sort of realize that maybe they were maybe they were mr. Cohorse wasn't responding or wasn't being incapacitated by them is that your understanding of the record did you understand it differently I would disagree your honor and one of the things I would point you to is the appendix at page 139 which is the use of force report there was mr. officer Smith had the opportunity to check a box if the taser was ineffective or wasn't working he did not check that box in his contemporaneous record and when you look at the video you see mr. Cohorse is reacting to the taser his body is tensing up he's turning over what mr. Smith is not doing is giving a man who's been slammed and tased a reasonable period of time to move his body so he can be controlled these happen in very quick succession and it reminds me quite a bit of the Jackson V staircase with respect to the second tasing where it was this very quick successive tasing really each time for mr. Cohorse and if you watch officer Smith he's not in danger he's taking calls he's talking he's just frustrated and he wants to he's continuing to tase mr. Cohorse in hopes that mr. Cohorse is gonna you know move very quickly to do exactly what he wants him to do but it's not necessary he's continuing to impact this man who's already been intoxicated and slammed and a reasonable officer would look at mr. Cohorse see he's clearly not posing a threat he's you know he's just on the floor writhing obviously in pain and take the time to either wait for your partners to come or put the taser down and apply handcuffs through a handcuffing technique any of those you just mentioned something that's interesting he was alone right the officer was it was a dark dark street or you know it was a dark area he thought there were two people right because he thought that or at least that's the evidence could support that is that relevant in your mind whether or not the use of force at any point was reasonable I at most it's a fact question your honor because again on mr. Smith's use of force report and this is kind of similar to the Carol's case that your honor had decided on the use of force report officer Smith does not denote that the potential for a second subject is a reason he used any of the force on mr. Cohorse and in a light most favorable to mr. Cohorse the other person is just someone else like mr. Cohorse who needs some help yeah there might be a second person who's in need of help but at no point in time did officer Smith ever encounter anything that he believed was dangerous if he thought those individuals were dangerous your honor common sense tells us he would have frisked them and detained them and put mr. Cohorse in the squad to look for another dangerous individual this was a call for help and he was there to help these gentlemen and so at most that's a fact question and with respect to it being at night I know I think it's the Murphy case that mr. Flynn had recently I believe was Murphy that he cited previously in a 28 J letter this is not a situation where you're on the side of a highway and there are cars whizzing by and you have to be concerned that maybe an intoxicated person could walk into traffic and I know that's been raised that's not the case here at all it's a calm quiet Street we don't see an another single car go by it's a sleepy suburb and you have a vulnerable individual who needed help and instead just because he didn't do exactly what the officer wanted him to do at exactly that moment he got tased and slammed multiple times and that was unlawful. Mr. Sturm could I ask a question about mr. Stoller's involvement the taking of mr. Cohorst out of the back of the squad car as I understand well the district court if I understand correctly said that it was undisputed or at least uncontroverted that he was twisting that such a way to sort of be obstructive to mr. Stoller is that undisputed that there was that resistance or is there a is there any kind of fact dispute there your honor on the video we see no resistance on the video and that's what we have to go with but in the video there's nothing that mr. Cohorst is engaging in that is so active and potentially violence that mr. Cohorst needs to be slammed to the ground while in handcuffs it's a gratuitous act and I would say it's an irrelevant fact even if it's not disputed you know here I you know we have a plaintiff who has who has amnesia as a result of this event and that's not something that can be disputed based upon the state of the record and so we don't have mr. Cohorst to say what he was doing with his hands but we have the video and we can look at it and say okay the officers were not threatened at that moment in time and we know that because officer Oldrich said in his words he was giggling he's giggling and mr. Cohorst in the position he got himself into they were they needed to get him out of the squad but there were multiple officers there who could have done it in a manner that did not result in mr. Cohorst being slammed to the ground and the way that the is it do I understand your position that it doesn't matter whether he hit his head or whether he was tossed in a way that his head was first or shoulder and was first is that your position absolutely your honor the science says that you can suffer TV eyes from a strong blow to the body and anyone who's familiar with hockey or other contact sports would know that as well and so here you have to control and bring into the ground because slamming his body is just as so whether or not he hit his head is irrelevant what matters is that he could have been taking out the squad in a reasonable manner wasn't and a very large man slammed him to the ground while he was handcuffed and couldn't brace his fall and at this point of time it's undisputed or plaintiffs get the inference that that caused mr. Cohorst injury based upon the state of the record your honor did Stoller know that I know we've talked about Smith did he was a participant in a bar fight I there's nothing there's nothing in the but one I just want to say there is no bar fight just so we could be clear about the bar fight but the the fight at the was a fight at the at the theater I apologize and I just it was it's just a different point you're on because judge Eric I'm sorry I passed my time can I answer your question just so I so just to be clear there's no evidence that anything physical happened at the movie theater to make clear but to I do not believe there's anything established in the record to show at the moment in time that that happened that officer Stoller knew that but it's also irrelevant because we're not we're not back in Brown and Montoya and all those cases we're at a point where someone's handcuffed and the question is is this a gratuitous act to someone who's handcuffed and it was and so it's less than it would be otherwise your honor Judge Kelly I just have one question if it's okay with you um you made some references to Jackson V Stare and it's kind of unfair because I had an opportunity to review both of these videos in great detail on numerous occasions and if you look at there's a couple of differences in the videos and did you ever did you see the Jackson V Stare video? I have not seen the Jackson V video your honor. There's there's actually considerably more time between tasings in this case than there were in the second Stare casing and in my recollection and but what's what struck me is that we have a person who may have been so intoxicated he was totally incapable of responding to any direction and if you look at it he was slow he was I was just very intoxicated the one question I've got that you know factually is that the video is not very helpful as to what happened when officer Smith reached for the billfold because they got so close together that at that point all you're seeing is things flying in all directions but immediately officer Smith goes stop fighting with me and so one could infer from that that there are that there's some physical altercation that takes place at the initiation of or make the response of cohorts to Smith's initiated conduct. Does that make any difference at all and how you would analyze the case? It doesn't for me your honor because you know we can look at the video and we can see that Mr. cohorts didn't push kick punch or anything active like that and we also can see at the end, Mr. cohorts is clutching his identification and so we know at most he maybe has one free hand and and we also know that officer Smith is behind him so at most we might have some sort of passive resistance where he's not turning this identification over but there's nothing on the video to suggest that he's engaging in any sort of violent conduct towards officer Smith and I would see it as similar to the to the plaintiff in Brown who doesn't hang up her cell phone before she gets tased. We're talking about a very de minimis act and and Mr. cohorts you know I think is similar to that plaintiff in that regard your honor. We're not talking about something dangerous some any sort of threat or threatening motion with a fist that you see it's just someone who didn't give up their wallet your honor. Thank you Mr. Storms we're ready for you Mr. Flynn. Thank you your honor may it please the court show Flynn on behalf of sergeant Stoller and officer Smith. I'm not really sure where to start but I guess I have a couple of minutes here just to answer perhaps some of the questions this court asked and one of the questions I'll respond to Judge Erickson's comment about the level of intoxication. You can hear throughout that he is arguing repeatedly demanding his constitutional rights and as plaintiffs pointed out in their brief quite logically they say and you'll note at the very end when finally after the Rudley decision which we gave to this court in the 28 J letter at the end he is able to comply he rather quickly puts his hands behind his back realizing that his pattern of resistance is not going to be successful and with regard to you know whether there's any physical altercation between them you can see on the videotape and it's consistent with officer Smith's testimony that he was not in contact with officer Smith. Also there was other physical contact initially as I think Judge Erickson pointed out there was this confrontation near the car when he's trying to get him up against the squad car and he's saying don't fight with me well that was preceded by an effort to grab him by the jacket which he pulled away also another effort to grab his arm in which he walked away also efforts to try to identify him which he had every right to do and if you're we did brief that in the summary judgment memo that he had a right to do that and they didn't argue to the contrary so regardless when he's trying to get his ID he won't show him his ID and he has a right to get his ID and then no words were spoken I it's might be one of the most the biggest number of commands I've heard given in any police case I've had I mean it's repeatedly put your hands behind your back stop resisting trying to get him to comply over and over and over again and it's not successful because he won't do it he wants to argue with the officer he wants to resist and the tasings occurred as a result of efforts by mr. Smith or mr. Kohler's to hold his arms underneath them and the officer undisputedly tries to pull the arm off from under him repeatedly without success because he's resisting and the taser results from that conduct and there's times between the tasings where he's again given orders where he refuses to comply where he's worn and he continues to engage in the same pattern of resistant conduct so if there's a course of physical resistance here that's far beyond anything in Brown and Toya Shannon cases in those cases for air perils perils the court indicated that the movement and putting out a cigarette did not demonstrate enough physical resistance to wear to warrant a takedown well the level of physical resistance here is far beyond that in Carol's or Montoya where the where there's no no one's told they're under arrest no orders are given and the officer literally rushes at this person to 10 to 15 feet away and takes them down. In this case if you take time B being the takedown that you've described what is time A for you what is the time at which he begins to resist such that a takedown or force should happen how much how much what kind of time frame do we have here? I mean well I think in terms of when the takedown should have occurred I think it occurred at the right time because they let me let me I'll be more specific at what point you you've talked about the need for the takedown because of resistance is that am I understanding your position? Resist physical resistance and refusal to part of Mr. Cohorst begin. Well before the takedown the takedown occurred it was it began almost immediately when he encountered him and starts giving him orders and he's refusing to comply he asked him to have a seat on the squad car he refuses to do it he asked him again to have a seat in the squad car he refuses to do it he tells him take your hands out of your pocket I mean obviously any officer would perceive that to be a considerable danger when a this is all before the takedown he then reaches to try to grab his jacket to pull him towards him because he's not coming to the car as he asked he pulls away he tries to grab his arm he pulls away all those things preceded a takedown by the officer in Longwood he's trying to get him up against the squad you can hear him say don't fight with me and the officer testifies that he's tensing up and he thinks he's fighting with him and if you take the point of time and maybe you don't know this off the top of your head but the time the first point where mr. Kohorst you've described kind of pulls away with the wallet request how much time between that pull away and the takedown do you know I don't know exactly the video reflected I'm I would estimate 30 to 45 seconds 30 seconds maybe I I don't know it I know there was enough time to get also to follow up with when you grab the jack to follow up trying to grab the arm and then to try to get him up against a squad and then for him to walk away so I mean there's there's a lot of physical resistance and you have to look at the at the case law and you look at Kelsey and the Kelsey you can even take the dissent in Kelsey and say that well the dissent distinguished the others case from Kelsey saying at least in elders there was some apparent resistance well here we've got a parent resistance times 50 I mean far beyond anything in elders I mean literally there was no hands-on before the takedown occurred in elders here there is a physical struggle a prolonged physical struggle with a single officer in the dark on a roadway just like the Murphy case it was on a on a roadway with cars coming by and an intoxicated subject and the order in in that case was simply turn around and the takedown occurred and that force was considered to be proper in that case what about the what about the officer Smith's knowledge or lack thereof of the altercation that the cohorts might have been involved in the altercation earlier at the movie theater not the bar in the movie theater first of all I think it's nonsense to say that officers don't look at their screens when they're driving I mean that's just otherwise why do they have the screens as a responding to an event and cat information coming up on it and it's a pure speculation that he didn't he didn't see that he said he saw it but regardless you can even put that of any crime as material it's the conduct that justified the use of force and that's absolutely correct because the conduct here is certainly as egregious and I think far more egregious than the conduct in rudley murphy Kelsey I understand that but but we do distinguish in this circuit between violent and nonviolent misdemeanors and then the standard we applied a little bit different and so if officer Smith knew that he was a perhaps a violent misdemeanor or had reason to believe it was a violent misdemeanor then we're not even in those other cases you understand what I'm saying well you're you're in you're in Ehlers you're you're you're you're in rudley you know Kelsey Kelsey she was she was a witness she was walking towards her right when the officer grabbed tried to grab her arm and she just kept walking to her daughter and I mean she was not you know a suspect any crime you she was not giving repeated commands there was no prolonged hands-on struggle she just walked away and he took her down and fractured her collarbone so in the allegation in there and in the case was that she was walking towards other people who had been involved in an altercation and it was a dangerous and volatile situation well on the other hand she's a five-foot tall woman who well you don't have to convince me but you know the difference in those case no hands those cases all involved use of force there's no hands-on there's no intoxication there's no repeated pulling away there's no refusing dozens of commands there's no kicking and you know at some point in time the conduct here transitioned from a welfare check to criminal activity on the part of mr. Kohler's and the courts and even so you look at the Kravner case which this court decided recently and in that case you can you can seize and use force against someone regardless of any criminal activity and in that case they did use considerable force and the person was I wasn't nonviolent in that case he was when they showed up there was no indication he was violent and no report and they and they end up using considerable force for less resistance then was encountered by officer Smith so and you know there's a lot of characterizations of the conduct here as you know it's simply it's he was just being being difficult or he was harmless and and and so on but you have to you look at the facts of the case and look at the course of conduct of resistance here it's pretty pretty extensive and you have a civil officer on the scene the courts have said that that is a that's a factor like look at Brown one of the factors in Brown and by the way Brown but just sitting in her car and when the force was utilized so but the court did say one of the factors in the multiple officers on the scene and here he was it and you know would have been nice to have other officers there but there are other calls that are important to what some were on an alarm of a business they've got alarms going off it's a potential burglary and others are on a domestic dispute with a firearm so some officer Smith had to deal with this this is this very resistant individual who would who had by reports undisputed and intoxicated bread nearby in the darkness so he needed to get the situation under control and it was appropriate and I'd also I think judge Erickson's comment about the Jackson Beach staircase it is correct because the second tasing in that case well the first tasing occurred essentially when that was just a dispute at an automobile shop and when they arrived they asked him to turn around and take his hands out of his pocket and he doesn't so they tase him and he goes down and then he's incapacitated as the court essentially the court said he's just he's essentially incapacitated he's not doing anything to resist and they tased him again what court thought that was gratuitous well there's nothing like that here this individual is actively resisting between tasings and with regard to the third tasing which the court also found was appropriate the individual started to rise up which is which is what you saw mr. Coleridge do he came up and his arms are extended and it's at that point where the officer grabbed his arm to stop him from doing that I mean he gets his chin which which is you know other than striking his head against the squad cars the only time any any any any there's any evidence of any his head being struck but but I would you know I would ask this court to take a close look at Kravner Murphy and Ehlers and in those cases and it's this case is is nothing like Brown Montoya Shannon and small and all the other cases cited by plaintiffs and and also with regard to to officer sergeant Stoller the question was asked is there any evidence are you disputing that he was actually twisting his hands there's no evidence to the contrary they're just declaring that there's evidence that there's evidence you can't just speculate and say he wasn't doing it everything is consistent with that it's consistent with the video when you hear the officer say stop twisting your hands and you'll note that the officer takes great lengths to try to explain to him the need to cooperate and he and he argues with them he's belligerent about it and so he's not he's got one hand up his cuffs are between his legs and what every officer knows that an individual gets her handcuffs in front of them which he was attempting to do is constitutes a very dangerous thing so they're dealing with an individual who was dangerous and whom they couldn't they weren't able to deal with him and get him re-cuffed in the car because of his lack of cooperation and belligerence and so the officer had to had to take him down on the ground in order to do that so I see an argument that essentially that Stoller is confronted with a person who's essentially hogtied and it's just sort of gratuitously slammed to the ground the argument that you're making is actually the movement of the wrist and the twisting and turning and the conduct in the backseat that got him into this position is all an indication that he posed more of a threat to those officers than just some person who's hogtied because you know the argument could be made they have two officers on the scene at that point one on each side could have gotten him to the ground without the same degree of force. Well Officer Stoller's yeah it's he's a big guy and he's there's not a lot of room to get around him to get a hand in there so an officer Stoller is physically capable of doing that but you still have to get the handcuffed off to get him out of that position and it doesn't take much resistance on the part of Mr. Kohler's to stop that objective and so it was necessary to take him out and he certainly couldn't walk out on his own in the position he was in that he put himself in and I just briefly respond the officer chuckling at him he was chuckling at the fact that he was blaming the officers for putting him in that position which which frankly is preposterous and is slightly amusing but anyway I have nothing further. Thank you. Thank you. Mr. Storms do you have some rebuttal? Your Honor I my time has I'll give you a minute work. Yeah thank you Your Honor just briefly on one of your questions Judge Kelly between the time before the initial takedown he was given almost no time to comply it happened in a matter of seconds between the time that Mr. between time officer Smith told him don't fight with me and slammed him to the ground it was very quickly. With respect to Kelsey the one point I want to make on Kelsey is that in Kelsey you know you have the individual walking away which implicates fleeing but it also implicates a potential danger because of the individuals who miss Kelsey there was concerned that she might go fight with them and here we don't never have Mr. Cohorse attempting to flee and we never have him attempting to go and fight with anyone. The a reasonable juror could watch this video conclude that when Mr. Cohorse legs move it's not kicking the officer he's being subjected to taser usage and rolling as a result of that. Thank you thank you both for your arguments today we appreciate your advisement. Thank you Your Honor.